Submitted on remand February 16; counts 2 and 5 reversed and remanded, remanded for resentencing, otherwise affirmed May 3, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RYAN WAYNE PERKINS,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR05893; A172739

529 P3d 999

On remand from the Supreme Court for reconsideration in light of *State v. Shedrick*, 370 Or 255, 518 P3d 559 (2022), the Court of Appeals reconsidered its conclusion in *State v. Perkins*, 314 Or App 741, 495 P3d 1289 (2021), with respect to whether the trial court erred by not delivering defendant's requested jury instructions which addressed the culpable mental state applicable to the property-value element of a theft charge. In *Shedrick*, the Supreme Court overturned precedent that did not require the state to prove that a defendant acted with a culpable mental state with respect to the value of stolen property. *Held*: Under *Shedrick*, the trial court erred when it did not instruct the jury that, to prove a charge containing a property-value element, the state must prove that defendant acted with criminal negligence with respect to that element. That error, which was a federal constitutional error, was not harmless under *Neder v. United States*, 527 US 1, 119 S Ct 1827, 144 L Ed 2d 35 (1999).

Counts 2 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

On remand from the Oregon Supreme Court, *State v. Perkins*, 370 Or 471, 520 P3d 883 (2022).

Jerry B. Hodson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Lagesen, Chief Judge, and Joyce, Judge.

LAGESEN, C. J.

Counts 2 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

**LAGESEN, C. J.**

This case is on remand from the Supreme Court for reconsideration of our decision in *State v. Perkins*, 314 Or App 741, 495 P3d 1289 (2021) (*Perkins I*), in light of *State v. Shedrick*, 370 Or 255, 518 P3d 559 (2022). *State v. Perkins*, 370 Or 471, 520 P3d 883 (2022) (*Perkins II*). In our original decision, we affirmed four out of five of defendant's convictions; we reversed the conviction on Count 5 because it had been based on a nonunanimous verdict. *Perkins I*, 314 Or App at 742. For the reasons that follow, we conclude that *Shedrick* requires the reversal of defendant's conviction for aggravated first-degree theft (Count 2). We otherwise adhere to our previous disposition.

FACTUAL AND LEGAL BACKGROUND

To give context to our analysis of the question on remand, we set forth the relevant background of this matter and then describe the Supreme Court's decision in *Shedrick*.

A jury convicted defendant of aggravated identity theft, ORS 165.803 (Count 1), aggravated first-degree theft, ORS 164.057 (Count 2), computer crime, ORS 164.377 (Count 3), unlawful use of a vehicle, ORS 164.135 (Count 4), and possession of a stolen vehicle, ORS 819.300 (Count 5). *Perkins I*, 314 Or App at 742. The jury was unanimous as to all counts except for Count 5. *Id*.

Defendant's conviction on Count 2 was based on his act of using a false ID to rent a U-Haul cargo van and then not returning the van. The state alleged that the value of the van was $10,000 or more, making that conduct aggravated first-degree theft. Defendant asked the trial court to instruct the jury that it had to find that he was criminally negligent with respect to the alleged value of the U-Haul van (more than $10,000) to convict him on the charge. Specifically, defendant requested that the court instruct the jury that, in addition to the other elements of the offense, it had to find that defendant "was negligently unaware that the value of the merchandise was greater than $10,000." In conjunction with his request for that instruction, defendant also requested that the trial court deliver Uniform Criminal

Jury Instruction (UCrJI) 1038, which defines criminal negligence. That instruction would have told the jury that,

> "When used in the phrase 'was negligently unaware that the value of the merchandise was greater than $10,000,' 'negligently unaware' means that the person fails to be aware of a substantial and unjustifiable risk that the value of the merchandise was greater than $10,000. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in a situation."

The trial court declined to deliver the instructions, a ruling that was consistent with our case law at the time. *See State v. Stowell*, 304 Or App 1, 11-12, 466 P3d 1009 (2020) (under Court of Appeals precedent, the state was not required to prove that a defendant acted with a culpable mental state with respect to the value of stolen property); *State v. Morales*, 299 Or App 392, 394, 450 P3d 552 (2019), *rev den*, 366 Or 293 (2020) (applying same rule); *State v. Jones*, 223 Or App 611, 622-23, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009) (same).

Defendant appealed. Pertinent to the issue now before us, defendant assigned error to the trial court's decision not to deliver his requested jury instructions regarding the criminal-negligence mental state that, in defendant's view, applied to the property-value element of aggravated first-degree theft. Relying on *Stowell*, we rejected that argument. *Perkins I*, 314 Or App at 742. We therefore reversed the conviction on Count 5, which was based on a nonunanimous verdict, but otherwise affirmed. Defendant petitioned the Supreme Court for review.

While defendant's petition was pending, the Supreme Court decided *Shedrick*. Similar to the situation here, the defendant in *Shedrick* had been charged with first-degree theft, based on the allegation that he stole property valued at $1,000 or more. *Shedrick*, 370 Or at 257. As here, the defendant argued that the state had to prove that he had a mental state of criminal negligence with respect to the property-value element of the offense. *Id*. at 258. As here, the defendant requested that the jury be instructed that

it had to find that that he "was negligently unaware that the value of the property stolen was valued at $1,000.00 [or] more." *Id*. at 258 n 1. The defendant also requested that the jury be instructed on the meaning of "negligently unaware" in an instruction virtually identical to the one requested by defendant here. As here, the trial court denied that request and we affirmed based on our precedent.

The Supreme Court affirmed but went a different direction than we had. Overruling *Stowell* "and similar cases," it ruled that the trial court erred when it did not instruct the jury on the mental state element: "As we have discussed, the jury was not instructed that it had to find that defendant was criminally negligent with respect to his awareness of the amount of the money that he took to find him guilty of first-degree theft, and we conclude that the court's failure to give an instruction on the culpable mental state was error." *Shedrick*, 370 Or at 269-70. The court nonetheless affirmed, concluding that the error in not instructing the jury on that mental state element was harmless. That was because, in the court's view, given the evidence in the record, a properly instructed jury would have found that the defendant had the requisite mental state. The court explained:

> "We agree with the state that there is little likelihood that the error affected the verdict. Jurors with common knowledge about ATMs, including the kinds of denominations of bills typically in an ATM, and about the interests of a bar owner in maintaining the cash levels in the ATM for customers to use it, would have understood that the circumstances indicated a substantial risk that a large amount of money, at least $1,000, was in the stack. Assuming that the jury would have concluded that defendant nevertheless was unaware of that risk, the jury would then have to consider the nature of the risk and whether defendant's failure to be aware of it was a gross deviation from the standard of care that a reasonable person would observe in that situation. On that question, defendant argues that the evidence reflects that he took the money quickly and that he and others did not know from looking at the bundle from a distance how much money was in it or what amount was printed on the bank band. But that argument goes more to defendant's lack of knowledge of the exact amount of the

cash rather than to the substantial risk that the amount was significant. The evidence reflected that, before he took the cash, defendant sat near the ATM in a video poker area and watched the bar owner prepare to fill the ATM with a sizeable bundle of cash, specifically 100 bills secured with a bank band. In view of that evidence, defendant's failure to be aware of the substantial and unjustifiable risk that the cash was worth a significant amount, at least $1,000, was a gross deviation from the standard of care that reasonable people would exercise. For those reasons, we conclude that the trial court's error in failing to give defendant's requested jury instructions requiring the state to prove that he was criminally negligent with respect to the value of the property taken had little likelihood of affecting the verdict and therefore was harmless."

*Id*. at 271-72.

Although the court determined that the trial court (harmlessly) erred by not instructing the jury in the manner requested by the defendant, the court explained that it did not decide whether criminal negligence was the legally correct culpable mental state applicable to the property-value element of a theft charge. *Id*. at 269-70 & 270 n 2. The court noted the possibility that the requisite culpable mental state might be intentional, rather than negligence. *Id*. at 270 n 2. Nevertheless, as we understand the court's reasoning, the trial court's failure to deliver the defendant's requested instructions was erroneous, even if the instructions might not have been legally correct, because the error meant that the jury was not told that it had to find that the defendant acted with a culpable mental state with respect to the value of the property that he took. *Id*. at 270.

## ANALYSIS

We turn to our task on remand, evaluating how *Shedrick* bears on the disposition of the assignment of error challenging the trial court's failure to deliver defendant's requested jury instructions addressing the culpable mental state applicable to the property-value element of the theft charge against him. We conclude that, under *Shedrick*, the trial court erred when it did not instruct the jury in the manner requested by defendant.

The instructions requested by defendant here are not distinguishable in any material way from the instructions requested by the defendant in *Shedrick*. Although the Supreme Court in *Shedrick* did not ultimately determine whether those instructions contain the legally correct culpable mental state applicable to the property-value element of theft, we understand the court's decision to stand for the proposition that, pending the resolution of that question in a case that properly presents it, a trial court must, at minimum, instruct the jury that it must find that a defendant acts with criminal negligence with respect to the property-value element of a theft charge containing a property-value element. As in *Shedrick* itself, we do not resolve the question because neither defendant nor the state has argued that a higher culpable mental state applies. We acknowledge that it is anomalous to conclude that a trial court erred by declining to deliver particular instructions without determining whether those instructions were legally correct. *See State v. Prophet*, 318 Or App 330, 350, 507 P3d 735, *rev den*, 370 Or 472 (2022) (concluding that trial court did not err in declining to provide the defendant's instruction regarding a culpable mental state because instruction did not articulate the legally correct culpable mental state). But that is the approach taken by the Supreme Court in *Shedrick*, so we follow that court's lead.

The remaining question is whether the error is harmless. On that point, we observe that the error at issue here is not an ordinary instructional error. Rather, the failure to submit a required element of an offense to the jury is a federal constitutional error. *Neder v. United States*, 527 US 1, 8, 119 S Ct 1827, 144 L Ed 2d 35 (1999) (a jury instruction that omits an element of an offense constitutes constitutional error). That is, the omission of an element from the court's instructions deprived defendant of his right under the Sixth and Fourteenth Amendments to a jury determination on an element essential to guilt.[1] *Id*. at 8-15. Accordingly, to affirm,

---

[1] "It is obvious that to be guilty of any offense defined to include a culpable mental state, culpability is required and must be proved by the state." *State v. Chang Hwan Cho*, 297 Or 195, 199 n 6, 681 P2d 1152 (1984); *State v. Hill*, 298 Or 270, 280, 692 P2d 100 (1984) (reversal is required if the record demonstrates that the jury could have convicted the defendant without finding that the defendant acted with the required level of culpability).

we must be able to conclude that the error is harmless beyond a reasonable doubt. *Neder*, 527 US at 15; *see State v. Bray*, 342 Or 711, 724-26, 160 P3d 983 (2007) (applying *Neder* framework to determine whether failure to submit sentencing factor to jury, in accordance with the defendant's jury trial rights under the Sixth and Fourteenth Amendments, was harmless).[2] The test "is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder*, 527 US at 15 (internal quotation marks omitted).[3]

On this record, we are unable to conclude beyond a reasonable doubt that the jury's verdict would have been the same, absent the failure to instruct it on the required culpable mental state for the property-value element of the offense. Assuming a criminal negligence standard,[4] the record provides little evidence that would allow a jury to assess whether defendant was negligently unaware of a "substantial and unjustifiable risk" that the van was worth $10,000 or more and, if so, whether that risk was "of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10) (defining

---

[2] In *Ramos*, the Supreme Court concluded that a felony conviction by a nonunanimous jury violates a criminal defendant's jury trial right under the Sixth and Fourteenth Amendments, and, further, that the constitutional violation is not a harmless one. *Ramos*, 590 US at ___, 140 S Ct at 1408. On its face, that approach to whether a violation of the jury trial right is harmless appears to have more in common with the approach of the dissenting opinion in *Neder* than it does with the approach of the majority opinion. *See Neder*, 527 US at 30 (Scalia, J., dissenting). The Court did not, however, explicitly call *Neder* into question in its harmless error analysis in *Ramos*.

[3] In conducting the harmless error analysis in *Shedrick*, the court cited to two state cases that articulate the legal standard for harmless error analysis under Article VII (Amended), section 3, of the Oregon Constitution, and did not specifically discuss the harmlessness standard that applies to a federal constitutional error. We do not understand the court's silence on the point to signal an intention to depart from *Neder* and *Bray* and the harmless error analysis that applies to the federal constitutional error of failing to submit an element of an offense to the jury.

[4] As noted, Oregon courts have not addressed, and the parties have not asked us to consider, what the required mental state would be for the property-value element of the offense. In the absence of the need to make that determination, we assume, without deciding, that the applicable culpable mental state for the property-value element is, as defendant argues and the state does not dispute, criminal negligence. *See Shedrick*, 370 Or at 270 (same); *State v. Boggs*, 324 Or App 1, 7, 524 P3d 567 (2023) (same).

criminal negligence); *Shedrick*, 370 Or at 271 (employing that definition in a harmlessness analysis). Vehicle values, particularly used vehicle values, can vary based on vehicle condition. They also are not necessarily a matter of common knowledge because, for many people, vehicle purchases are few and far between. The record here contains no evidence about the van's condition or mileage, the types of facts that would be relevant to whether a person in defendant's position was negligently unaware that the van was worth more than $10,000. The record contains no evidence that defendant was informed of the model year of the van. There is no evidence that defendant was informed of the van's value at the time he rented it.

The only evidence potentially probative on the question was the evidence that the state introduced to prove that the van was worth more than $10,000. That evidence consisted of testimony from a U-Haul employee giving an estimate of that model of van's worth, both used and new. The witness also testified that it was his job to be familiar with the value of such vehicles. That evidence of value—from a witness whose job it is to know the value of U-Haul's vehicles—is not the sort that would require a reasonable jury to find that defendant's failure to be aware that the used rental van may be worth $10,000 or more "constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085. On the contrary, given the lack of evidence about the van's condition, mileage, or other facts that would signal to a person in defendant's position that the van's value exceeded $10,000, a jury would not have to be persuaded beyond a reasonable doubt that defendant acted with criminal negligence with respect to the van's value. Although a reasonable juror no doubt could be persuaded, a reasonable juror could also fail to be persuaded that defendant had the requisite culpability. The court's error in failing to submit the required culpability element to the jury therefore was not harmless beyond a reasonable doubt. *See Bray*, 342 Or at 725-26 (under *Neder* standard, error in failing to submit sentencing factor to jury for its determination was not harmless because "we cannot say that no reasonable juror could draw any conclusion other than" that the factor was present).

As mentioned, in our previous decision we concluded that defendant's conviction on Count 5 had to be reversed because the verdict on that count was not unanimous. *Shedrick* does not alter that determination.

Counts 2 and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.