98 February 20, 2025 No. 122

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY JAMES ACREE,
*Defendant-Appellant.*

Douglas County Circuit Court
22CR24837; A179401

Kathleen E. Johnson, Judge.

Argued and submitted February 26, 2024.

Emma E. McDermott, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for second-degree theft, ORS 164.045, and second-degree criminal trespass, ORS 164.245, for stealing construction items from a construction company. In a single assignment of error, defendant argues that the trial court erred when it refused to instruct the jury that the value element of theft required a mental state of criminal negligence.[1] Reviewing for errors of law, we affirm. *See State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000).

During a nighttime patrol, a police officer observed defendant[2] run down the street, carrying "something very large." The officer followed defendant and watched him dive into the front yard of a house. When the officer located defendant, they found a Milwaukie battery charger nearby. Some hours later, a generator was found near to where the officer stopped defendant, and police learned that both items were taken from a construction company. The items had been stored in a locked trailer, behind a locked chain link fence topped with barbed wire. A hole had been cut in the chain link fence, and video evidence, taken right before the officer observed defendant, showed a person crawling through the hole carrying a large object. The construction company reported that other construction tools were also missing, but those additional items were not recovered. An employee for the company testified regarding the approximate price paid for the items when new: $600 for the generator, $100 for the battery charger, $1,500 to $1,600 for a hot saw, $300 for a half-inch impact gun, $300 for a grease gun, and $150 to $200 for missing batteries. The company owner testified that the items had been purchased within the last six months; another employee testified that the items had been purchased within the last one to two years.

---

[1] Defendant also argues that the trial court committed plain error by not instructing the jury that a mental state of "intentionally" applied to the value element of first-degree theft. But defendant specifically requested a criminal-negligence instruction, so he invited any error in not giving an intentional mental-state instruction. *Anderson v. Oregon Railroad Co.*, 45 Or 211, 216-17, 77 P 119 (1904) (an error is invited if the defendant was "actively instrumental in bringing it about").

[2] Although the officer did not know the person's identity when he first observed him, the person he saw and followed was defendant.

The state charged defendant with first-degree theft, third-degree criminal mischief, and second-degree criminal trespass. Defendant requested that the court instruct the jury that a conviction for first-degree theft required a mental state of criminal negligence as to the value of the stolen property. Specifically, defendant requested an instruction that to find defendant guilty of first-degree theft, the jury had to find that defendant "failed to be aware of a substantial and unjustifiable risk" that the stolen construction tools were worth at least $1,000, as well as that the risk was "of such nature and degree that the failure to be aware of it constitute[d] a gross deviation from the standard of care that a reasonable person would observe in the situation." *See* ORS 161.085(10) (defining criminal negligence). The trial court declined to give that instruction and did not include any instruction as to a requisite culpable mental state with respect to the value of the stolen property.

The court instructed the jury on both first and second-degree theft, as a lesser included offense. The court read the jury instruction that related to second-degree theft as:

> "The charged crime of Theft in the First Degree has a lesser included offense of Theft in the Second Degree. * * * [T]o establish the lesser included offense of Theft in the Second Degree the State must prove, beyond a reasonable doubt, each of the following three elements. (1) That the act occurred on or about March 9th of 2022. (2) That the Defendant, Jeremy Acree, with the intent to deprive another of property, took the following property. A Predator 2000 generator, a Husqvarna hot saw, Milwaukie batteries, a battery charger, grinder, and other tools, the property of Black Pearl Paving and Excavation. And the property had a value of $100 or more."

The jury acquitted defendant of first-degree theft but found him guilty of second-degree theft and criminal trespass. On appeal, defendant contends that the instructional error violated his rights under both state and federal law.

It is now well-established that the trial court must instruct the jury on a mental state with regards to the value

element of theft charges. *State v. Shedrick*, 370 Or 255, 269, 518 P3d 559 (2022). And the state correctly concedes that the trial court erred when it did not do so in this case. However, the state argues that we should nonetheless affirm because (1) the error was harmless beyond a reasonable doubt, and (2) defendant's requested instruction pertained only to first-degree theft and thus he failed to preserve his argument as it relates to second-degree theft.

We do not need to resolve the dispute regarding preservation, because even if the error was preserved as to second-degree theft, we conclude that it was harmless beyond a reasonable doubt under both Article VII (amended), section 3, of the Oregon Constitution and the United States Constitution. *See State v. Perkins*, 325 Or App 624, 630-31, 529 P3d 999 (2023) (applying federal constitutional harmless error standard to a preserved claim challenging the failure to instruct on the property-value element of theft); *State v. Horton*, 327 Or App 256, 263 n 3, 535 P3d 338 (2023) (noting that we apply federal harmlessness analysis when considering federal errors). The test to determine whether the omission of an element from the trial court's instruction was harmless "is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id*. at 631 (citation and internal quotation marks omitted). Under the state standard, the question is whether there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

Although he argues otherwise, the jury instruction demonstrates that the jury necessarily found that defendant took "a Predator 2000 generator, a Husqvarna hot saw, Milwaukie batteries, a battery charger, grinder, and other tools." The items were taken from a construction business, which was surrounded by a locked chain link fence topped with barbed wire. On that locked property, the items were in a trailer that was also separately locked. That level of security indicates that the owner believed the items had enough value to need to prevent others from taking them. The items included power sources and tools designed and built for construction and were substantial enough to be used in a

construction business. The nature of the items themselves indicates that the aggregate value of the items was likely more than $100. Indeed, testimony established that the value of the items if they were new was close to $3,000, and that they were under two years old.

Had the jury been instructed on the criminal negligence mental state as to the value of the items, it would have been required to determine whether defendant "fail[ed] to be aware of a substantial and unjustifiable risk" that the value of the items taken was over $100 and, further, whether that risk was "of such nature and degree that the failure to be aware of it constitute[d] a gross deviation from the standard of care that a reasonable person would observe in the situation."[3] ORS 161.085(10). Given the undisputed evidence as to the nature of the stolen items and level of security at the location where the items were stored, we conclude, beyond a reasonable doubt, that the jury would have found that there was a "substantial and unjustifiable risk" that those items had a value of more than $100.[4]

Importantly, criminal negligence does not require defendant to have known the value of the items. The key questions under negligence are ones of risk and awareness of that risk. Awareness involves "realization, perception,

---

[3] We observe that importing a general civil negligence framework into the criminal context presents serious challenges for trial courts and jurors who must apply it in practice. While examining the "standard of care" may work for doctors or drivers, it is not easily applicable to a situation in which someone is charged with stealing something, because, logically, a "reasonable person" observing a "standard of care" would not likely be taking something that did not belong to them. In addition, it is unclear what "standard of care" is employed by a person taking something that is not theirs. That said, barring intervention from the legislature, this is the framework that trial courts and jurors must currently work with and is the standard under which we resolve this case.

[4] The evidence of the security measures, the nature of the items, and the conviction of second-degree theft all distinguish this case from *Perkins*, in which we held that the court's failure to instruct on the mental state for aggravated first-degree theft for stealing a U-Haul van was not harmless. Importantly, we held that the record in *Perkins* "provide[d] little evidence that would allow a jury to assess whether [the] defendant was negligently unaware of a 'substantial and unjustifiable risk' that the van was worth $10,000 or more." 325 Or App at 631. For example, there was no evidence about the van's condition or mileage, or that the defendant was aware of the model year. *Id*. at 632. In contrast, on this record "'no reasonable juror could draw any conclusion other than'" that defendant acted with criminal negligence as to the risk that the value of the items exceeded $100. *Id*. (quoting *State v. Bray*, 342 Or 711, 725-26, 160 P3d 983 (2007)).

or knowledge." *Webster's Third New Int'l Dictionary* 152 (unabridged ed 2002). And risk is defined as "the possibility of loss, injury, disadvantage, or destruction" or "someone or something that creates or suggests a hazard or adverse chance." *Id.* at 1961. It bears emphasizing that the awareness is *not* of the value of the items themselves; it is of the *risk*—the possibility or chance—that the aggregate value of the items exceeded the value limit in the statute.

Moreover, on this record, we conclude, beyond a reasonable doubt, that the jury would also have found that failing to be aware of the risk that the items had a value of more than $100 was a "gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). The evidence supports only one reasonable inference: that a reasonable person in "the situation"—here, a person stealing items—would be aware that there was a risk that the items were worth more than $100. And whatever precise "standard of care" is applied in this situation, failing to be aware of the risk of a value over $100 for these items was a gross deviation from it. Accordingly, the error is harmless beyond a reasonable doubt and, for the same reasons, had little likelihood of affecting the verdict. And because the error is harmless, we must affirm. *Horton*, 327 Or App at 262.

Affirmed.