612 August 13, 2025 No. 732

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES AUSTIN BRESLIN,
*Defendant-Appellant.*

Douglas County Circuit Court
23CR18633; A182059

Steve H. Hoddle, Judge.

Argued and submitted April 21, 2025.

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for numerous offenses, including second-degree disorderly conduct, ORS 166.025, third-degree theft, ORS 164.043, and resisting arrest, ORS 162.315. He raises three assignments of error. We affirm.

*Disorderly conduct.* In his first assignment of error, defendant argues that the trial court erred when it denied his motion for judgment of acquittal (MJOA) on the second-degree disorderly conduct charge, ORS 166.025, because the evidence was legally "insufficient to show that defendant obstructed traffic."[1]

> "When a defendant's challenge to the legal sufficiency of the state's evidence depends upon the meaning of the statute defining the offense, we review for legal error. Then, based on the proper construction of the statute, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt."

*State v. Silver*, 335 Or App 377, 380-81, 559 P3d 431 (2024) (internal quotation marks omitted).

Here, the state alleged that defendant "did unlawfully and recklessly create a risk of public inconvenience, annoyance or alarm by obstructing vehicular or pedestrian traffic on a public way." At trial, the trial court admitted several exhibits into evidence, including an arresting officer's body camera video. After the state rested, defendant moved for a judgment of acquittal, arguing that the "video clearly shows [defendant] didn't obstruct traffic." The trial court denied the motion, reasoning that, "in this lens *** where [defendant] was at in the road with vehicles that close and slowing down, *** depending on how they view the facts, could be enough for a reasonable juror to find that he did obstruct vehicular traffic on a public way."

To support a conviction for second-degree disorderly conduct under its theory of the case, the state was required

---

[1] Under ORS 166.025(1)(d), a person commits second-degree disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person *** [o]bstructs vehicular or pedestrian traffic on a public way[.]"

to prove that defendant's "conduct (obstruction) * * * at minimum, create[d] a risk of causing public inconvenience, annoyance, or alarm." *Id.* at 382. "[T]he term 'obstructs' includes a requirement that a defendant physically impede traffic rather than distract those in traffic *from the side of the road*." *Id.* at 382, 386 (emphasis added) (concluding that the trial court erred in denying the defendant's MJOA when, "[a]t most, there was evidence that defendant might have passed the fog line on occasion to retrieve items that flew off his car"). However, we have explained that, even if "there was only one vehicle on the road at that time, the state need not prove actual public inconvenience, annoyance, or alarm to any specific number of people." *State v. Moore*, 327 Or App 91, 98, 533 P3d 1123, *rev den*, 371 Or 771 (2023).

We have reviewed the record and conclude that the trial court did not err. Like *State v. Davis*, 303 Or App 90, 98, 462 P3d 295, *rev den*, 366 Or 827 (2020), "this is a close case." However, "we ultimately conclude that, viewed in the light most favorable to the state, sufficient evidence existed to permit the questions to go to the jury." *Id.* As noted above, the trial court admitted into evidence an arresting officer's body camera video. That video showed the officer following defendant and recorded the officer stating, "he's running into traffic." However, the officer's hand covered the camera while he made that statement. At trial, the officer explained that he made that statement on the radio and that he cannot use his radio without his hand covering the camera because, "unfortunately, that's one of the few places [the camera] actually fits" on his uniform. The officer further testified that, while his hand covered the camera, defendant "swerved into that, the lane. I guess from our view the lane closest to the curb. He ran into that and that car that you just saw leave. That's the car that had to swerve."

Seeking a different result, defendant argues that, "after [the officer] viewed a recording from his body camera, he acknowledged that *the recording did not show* defendant entering traffic or causing any vehicles to swerve to avoid hitting defendant." (Emphasis added.) The state responds that "that testimony did not contradict his earlier testimony that he independently recalled seeing a car swerve." Having

reviewed the record, we agree with the state's argument. Although the officer testified that he was "not sure" and that he "guess[ed] that [he] was wrong" in response to defense counsel's questions about the cars shown in his dash camera video, the officer's contemporaneous recorded statement that defendant "[was] running into traffic" and his testimony on direct examination about car movement that was not recorded by his body camera create a question of fact with respect to whether defendant "physically impede[d] traffic" after he left the sidewalk. *Silver*, 335 Or App at 382. "Under the standard of review applied to a motion for judgment of acquittal, the state must receive the benefit of that factual uncertainty." *Davis*, 303 Or App at 99-100 (concluding that the trial court did not err in denying the defendant's MJOA); *see also Moore*, 327 Or App at 98-99 (concluding that the trial court did not err when it denied the defendant's MJOA for second-degree disorderly conduct when "[r]easonable members of the public observing defendant at that time in that state could be alarmed about whether it was safe for themselves and defendant to attempt to drive around him").

*Third-degree theft.* In his second assignment of error, defendant argues that the trial court erred when it declined to give his requested jury instruction concerning third-degree theft.

Here, the state alleged, in relevant part, that defendant "commit[ed] theft of a step stool" from a store, and that the stepstool had a total value of less than $100. Although defendant asked the trial court to instruct the jury that it was required to find that defendant "intended that the stool have value," the trial court declined to do so. Instead, the trial court instructed the jury that it had to find that defendant "was criminally negligent" with respect to the stool's value.

We need not decide whether the trial court erred when it declined defendant's requested jury instruction because we conclude that any error was harmless. "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Because "the failure to submit a required

element of an offense to the jury is a federal constitutional error," "to affirm, we must be able to conclude that the error is harmless beyond a reasonable doubt." *State v. Perkins*, 325 Or App 624, 630-31, 529 P3d 999 (2023).

As relevant here, a person commits third-degree theft when, among other requirements, the "total value of the property *** is less than $100." ORS 164.043(1)(b); *see also State v. Waterhouse*, 359 Or 351, 362, 373 P3d 131 (2016) (explaining that the "value range" of third-degree theft "falls essentially between some value greater than zero but less than $100"). Further, a person acts "with intent" when "the person acts with a conscious objective to cause the result or to engage in the conduct so described." ORS 161.085(7).

At trial, a store employee testified that defendant took the stepstool, that the stepstool was for sale, and that its value was $14.99. In addition, the trial court entered into evidence a picture of the stepstool, which showed a large product sticker affixed to its side. In light of that evidence, we conclude that there is little likelihood that the verdict would have been different had the trial court instructed the jury that it was required to find that defendant "intended that the stool have value" when he stole it. "[F]or the same reasons," we conclude that "the error is harmless beyond a reasonable doubt." *State v. Acree*, 338 Or App 98, 103, 565 P3d 60 (2025). "And because the error is harmless, we must affirm." *Id.*

*Resisting arrest.* In his third assignment of error, defendant argues that the trial court plainly erred "by failing to instruct the jury that, to find defendant guilty of resisting arrest," ORS 162.315, "it was required to "find that defendant had at least a criminally negligent mental state with respect to the 'substantial risk of physical injury' element of the offense."[2] The state concedes that the trial court plainly erred but argues that we "should affirm despite that error because the error was harmless."

Although we accept the state's concession that the trial court plainly erred, we conclude that we have no discretion to correct the error because it is harmless. *See State v.*

_____

[2] "A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest." ORS 162.315(1).

*Sell*, 328 Or App 82, 94, 536 P3d 1019 (2023), *rev den*, 372 Or 63 (2024) (concluding that the trial court plainly erred when "the jury was not instructed that defendant had to be at least criminally negligent with respect to the injury element of the crime"); *see also State v. Dye*, 329 Or App 1, 10, 540 P3d 66 (2023), *rev den*, 372 Or 437 (2024) ("If an error is harmless, then we have no discretion to correct the error, and we must affirm[.]").

As noted above, an error is harmless when there is "little likelihood that the particular error affected the verdict." *Davis*, 336 Or at 32. "To determine if an error was harmless, we consider the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *Dye*, 329 Or App at 10 (internal quotation marks omitted).

Our decision in *Dye* is instructive here. In that case, the trial court failed to "instruct[] the jury as to a culpable mental state for the injury element" of resisting arrest, ORS 162.315. *Id.* at 9. Although we concluded that the trial court plainly erred, we determined that we had "no discretion to correct the error" because it was harmless. *Id.* at 9-11. That was so because the trial court had instructed the jury that, "to convict defendant[,] *** it had to find that defendant 'intentionally' resisted the officers." *Id.* at 11. "Assuming that the correct mental state for the 'substantial risk of injury' element of resisting arrest is, at a minimum, criminal negligence," we concluded that, by finding defendant guilty, the jury "necessarily would have also found that defendant was at least criminally negligent with respect to whether there was a substantial risk of physical injury" when he "pulled his arm forward while [a police officer] held onto it—in the middle of a creek with slippery rocks near a waterfall—two separate times."[3] *Id.* at 10-11.

---

[3] ORS 161.085(10) provides:

"'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Here, the jury heard testimony that, while police tried to arrest him, defendant "thrash[ed] around" with his head near a curb, "kick[ed] his feet" "at least three feet in the air," and kicked a corporal's face. The trial court instructed the jury that, in order to convict defendant, it was required to find that he "intentionally resisted [the officer] in making the arrest." It further instructed the jury that "resist" means:

> "Use or threatened use of violence, physical force, or any other means that creates a substantial risk of physical injury to any person. It includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. This behavior does not have to result in actual physical injury to an officer."

Because the jury found defendant guilty, we conclude that "it necessarily would have also found that defendant was at least criminally negligent with respect to whether" his conduct created "a substantial risk of physical injury" to himself or another person. *Id.* at 11. Therefore, the error is harmless, and we have no discretion to correct it. *State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023) ("We cannot reverse a judgment based on a harmless error, so if the error was truly 'harmless,' then we have no discretion and must affirm.").

Affirmed.